UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
CHARLES W. JONES,

       Plaintiff,


                  **MEMORANDUM AND**
                  **ORDER**

    - against -
                  07-CV-2713 (DRH) (ETB)

MICHAEL J. ASTRUE,
Commissioner of Social Security,


         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**A P P E A R A N C E S :**

**CHRISTOPHER JAMES BOWES, ESQ.**
Attorney for Plaintiff
54 Cobblestone Drive
Shoreham, New York 11786

**BENTON J. CAMPBELL,**
**UNITED STATES ATTORNEY**
Attorney for Defendant
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201
By: Diane Leonardo Beckmann, Assistant U.S. Attorney

**HURLEY, District Judge:**

*INTRODUCTION*

    Plaintiff Charles W. Jones ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the

"Commissioner" or "Defendant") which partially denied his claim for disability benefits.

Specifically, the Commissioner found that Plaintiff has not had the residual functional capacity

to perform even sedentary work as of February 7, 2006[1], and was therefore disabled as of that

---

[1] On February 7, 2006, Plaintiff was injured in a motor vehicle accident.

date, but was not disabled for the period of February 26, 2002 to February 6, 2006. Presently before the Court are Plaintiff's and Defendant's motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). For the reasons discussed below, Defendant's motion is denied and Plaintiff's motion is granted to the extent that this matter is remanded for further administrative proceedings.

## BACKGROUND

### I.     Procedural Background

Plaintiff applied for disability benefits on September 24, 2002. (Tr. at 38-40.)[2] Plaintiff claimed that he was disabled and unable to work since February 26, 2002 due to an injury he suffered to his lower back. (*Id.* at 50.) After his application was denied by decision dated December 16, 2002, (*id.* at 16-21), Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 22.) A hearing was held before ALJ Emanuel Poverstein on November 2, 2004, at which time Plaintiff, who was represented by counsel, testified. (*Id.* at 135-54.)

ALJ Poverstein considered Plaintiff's claims de novo, and on November 30, 2004, issued a decision finding that Plaintiff was not disabled. (*Id.* at 7-14.) The ALJ found that although Plaintiff suffered from a severe impairment which imposed limitations, Plaintiff had the residual functional capacity to perform his past relevant work as a school social worker or alcohol and drug counselor. (*Id.* at 14.)

Plaintiff requested that the Appeals Council review the ALJ's decision. (*Id.* at 5.) By letter dated March 31, 2005, the Appeals Council declined to review the claim, making the

_____

[2] References to "Tr." are to the Administrative Record filed in this case.

ALJ's decision the final decision of the Commissioner. (*Id.* at 2-4.) Thereafter, Plaintiff filed a civil action in this Court under docket no. 05-CV-2652 (ADS) seeking reversal of the prior decision by the Commissioner dated November 30, 2004. (*See* docket no. 05-CV-2652.) By Memorandum of Decision and Order dated April 27, 2006, District Judge Arthur D. Spatt remanded the action to the Commissioner of Social Security for further administrative proceedings. (Tr. at 180-96.)

On remand, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further administrative proceedings on July 8, 2006. (*Id.* at 199.) The Appeals Council Order instructed the ALJ to offer Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision. (*Id.*)

On January 22, 2007, a hearing was held before ALJ Michael S. London, at which time Plaintiff, who was again represented by counsel, testified. (*Id.* at 252-82.) ALJ London considered Plaintiff's claims de novo and on March 9, 2007, issued a decision finding that Plaintiff was not disabled prior to February 7, 2006, but that he was disabled as of February 7, 2006. (*Id.* at 158-63.) Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council declined to act on its own motion to review the claim, (*id.* at 155-63), thereby rendering the ALJ's most recent decision the final decision of the Commissioner. Plaintiff filed the instant action on July 5, 2007.

## II. *Factual Background*

### A. *Non-Medical Evidence*

Plaintiff was born on July 27, 1950 and completed college with a Master's Degree

in Social Work. (*Id.* at 38, 56.) He is single and has never married. (*Id.*) He worked as a drug rehabilitation counselor from 1986 to 1988, as a drug educator from 1988 to 1990, and his most recent employment was as a school social worker from 1990 to 2002. (*Id.* at 51.) In his disability report dated October 18, 2002, Plaintiff reported that as a school social worker, he counseled students in individual and group settings, attended CSE meetings, and made home visits for students. (*Id.*) In this position, he stated that each day he walked for two hours, stood for two hours, sat for one and a half hours, climbed for one and a half hours, handled objects for one hour, reached for half an hour and wrote for three hours. (*Id.*) As a school social worker, Plaintiff reported that he carried student files to meetings and arranged chairs in a room after sessions. (*Id.*) As an educator, Plaintiff stated that each day he walked two hours, stood four hours, sat for one hour, and carried program materials to classrooms that weighed less than ten pounds. (*Id.* at 61.) Finally, as a counselor, he reported that each day he walked/stood for one hour and sat for six hours and that in this position, lifting and carrying heavy items was not required. (*Id.* at 60.)

On February 26, 2002, Plaintiff injured his lower back while bending over to adjust a thermostat that was near the base of a wall in an office where he was working. (*Id.* at 140.) Plaintiff has not worked since February 26, 2002.

Plaintiff reported in October 2002 that on a daily basis he took care of his personal needs, took care of his pets, prepared his meals, did his laundry, retrieved his mail, read, wrote poetry, managed his finances, watched television, and visited with friends and family. (*Id.* at 68-73.)

At the first hearing, on November 2, 2004 before ALJ Poverstein, Plaintiff

testified that he suffers from, inter alia, "consistent pain in the lower back," "total numbness in the right leg," numbness in his right arm and a loss of fine motor skills and numbness in his right hand. (*Id.* at 141-42.) Plaintiff reported that he "can bend down and pick things up" but that these activities exacerbate the pain in his lower back. (*Id.* at 143.)

Medications did not help alleviate the pain. (*Id.*) Plaintiff stated that he had participated briefly in physical therapy and heat stimulation treatments but had discontinued these treatments two years prior to the hearing when his former employer's insurance carrier refused to continue to authorize the treatments. (*Id.* at 143-44.) His pain affected his ability to sit or stand, and he reported that he could sit or stand up for a period of fifteen to twenty minutes at a time, and then needed to lay down to take the pressure off his lower back. (*Id.* at 145.) Plaintiff estimated that he could walk approximately 100 yards before having to stop and that he could go shopping "without total discomfort" if the trip involved going from the parking lot to the store, walking a few aisles and then returning to his car. (*Id.*) Following such an activity would require Plaintiff to rest and relax for approximately an hour due to the pain to his back from the trip. (*Id.* at 145-46.) Plaintiff testified that he could bend down and pick up a five pound bag and that he would have no problem lifting "something that was waist high." (*Id.* at 146.) Plaintiff reported that he could drive with no difficulty so long as it is not for more than fifteen to twenty minutes at a time. (*Id.* at 150.)

Although Plaintiff reported at the November 2, 2004 hearing that he suffers from consistent pain, he stated that "I'm kind of like used to the pain now, after, you know, more than two years with it, you know. I have to function. I have to be able to do things. So I, you know, I do it with pain." (*Id.* at 143.)

Plaintiff was injured in a car accident on February 7, 2006.

At the second hearing before ALJ London on January 22, 2007, Plaintiff testified briefly[3], stating that he had not worked since his injury in February 2002 and that his pain and symptoms had not changed since that time.  (*Id.* at 252-82.)

**B.**     ***Medical Evidence Prior to February 7, 2006***

       **1.**     ***Dr. John Shimkus - Orthopedic***

The record reveals that Dr. Shimkus examined Plaintiff on March 1, 2002.  (Tr. at 113-14.)  Plaintiff had stated that he had injured his lower back when he was sitting at work and bent forward a couple of weeks earlier, and had pain and numbness that had not subsided.  (*Id.* at 113.)  On examination, Dr. Shimkus reported that Plaintiff had

> a restricted range of motion from mild to a moderate degree in flexion, extension, left and right lateral bending and rotation.  He c[ould] stand on heels and toes.  Trendelenburg signs [we]re negative.  Gait [was] normal.  Reflexes [we]re trace bilaterally. Power and tone [we]re grossly normal and symmetrical.  Sensation [was] grossly normal to simple touch in both feet.  Straight leg raising [was] negative seated.  There [was] no calf tenderness. Tenderness and spasm appear[ed] present in the lumbar region. There [was] no guarding in the lumber region.

(*Id.* at 114.)  X-rays of the lumbar spine revealed no fractures.  (*Id.*)  Dr. Shimkus diagnosed "lumbosacral spine sprain, rule out herniated disc," prescribed physical therapy three times, wrote a note excusing Plaintiff from working for two weeks and directed an evaluation with Dr. Robert Hecht in two weeks to determine the need, if any, for neurological testing.  (*Id.*)

      **2.**     ***Dr. Robert Hecht - Board Certified Orthopedic Specializing in Physical***

---

[3]It appears from the transcript of the hearing that Plaintiff's counsel and Plaintiff had made a strategic decision to limit Plaintiff's testimony at the hearing.  (*Id.* at 257.)

*Medicine and Rehabilitation*

Dr. Robert Hecht saw Plaintiff for a follow-up visit on March 18, 2002 and reported that Plaintiff complained of persistent back pain, radiating down his right leg. (*Id.* at 110.) He observed tenderness in the lumbar spine, with restricted flexion (75 degrees), extension (20 degrees), bilateral rotation, and bilateral lateral bending. (*Id.* at 110-12.) There was no muscle spasm, lordosis was normal and sensation was intact. (*Id.* at 110-11.) Straight leg raising was positive on the right side, and all other ranges of motion in the neck, shoulders, hips, knees and ankles were full. (*Id.*) Motor strength and reflexes were normal. (*Id.*) Dr. Hecht recommended that Plaintiff continue physical therapy, requested authorization for an electromyogram ("EMG") to rule out radiculopathy, and completed a form indicating that Plaintiff was "totally disabled at this time." (*Id.* at 110-12.)

Dr. Hecht reported the same clinical findings on June 6, 2002 as his prior examination, with the exception that his lumbar motion had increased to 80 degrees flexion. (*Id.* at 108-09) Dr. Hecht noted that he was still waiting for authorization for an EMG and additional physical therapy, and he again completed a form indicating that Plaintiff was "totally disabled at this time." (*Id.*)

On July 11, 2002 and August 22, 2002, Dr. Hecht stated the same clinical findings as his previous examinations and again noted that he was waiting for authorization for an EMG and physical therapy. (*Id.* at 101-06.) On August 22, 2002, Dr. Hecht completed a form indicating that Plaintiff was "totally disabled at this time." (*Id.* at 100.)

Dr. Hecht reported the same clinical findings on October 3, 2002 as his previous examinations with the exception that his straight leg raising was now negative and his lumbar

motion had decreased to 75 degrees flexion. (*Id*. at 96-99.) Dr. Hecht noted that he was still waiting for authorization for an EMG and additional physical therapy, and he again completed a form indicating that Plaintiff was "totally disabled at this time." (*Id.*)

Dr. Hecht's treatment reports dated November 14, 2002, December 19, 2002, February 13, 2003, April 9, 2003 and August 20, 2002 indicated that Plaintiff complained of persistent lower back pain, radiating down the right leg. (*Id*. at 210-12, 215-16.) During each visit, Dr. Hecht observed tenderness in the lumbar spine with restricted flexion, extension, bilateral rotation and bilateral lateral bending. (*Id.*) There was no muscle spasm, lordosis was normal, straight leg raising was negative, and Plaintiff had full active range of motion in the hips, knees and ankles. (*Id.*) Dr. Hecht noted that he was still waiting for authorization for an EMG and additional physical therapy, and indicated that Plaintiff remained disabled. (*Id.*)

In a Functional Capacity Evaluation dated March 6, 2003 to Cunha Mutual Group, Dr. Hecht reported that Plaintiff could sit and drive for one hour and could walk for thirty minutes, could use his hand for repetitive motion but that Plaintiff was disabled from working. (*Id*. at 213-214.)

On October 22, 2003, Dr. Hecht submitted a "Social Security Disability Narrative." (*Id.* at 90-92.) He noted that on February 26, 2002, Plaintiff was injured at work and that although he had received extensive physical therapy, his symptoms had persisted. (*Id.* at 90-92.) An x-ray of the lumbar spine was unremarkable. (*Id.*) Dr. Hecht stated that although he had requested an MRI and EMG of the lower extremities neither test had been authorized. (*Id.*) Based on a physical examination of Plaintiff, Dr. Hecht diagnosed that he suffered from, inter alia, "lumbosacral sprain-strain, secondary to a work related injury, possible lumbar

radiculopathy, possible herniated disc" and "vertebral body compression fracture of the cervical spine." (*Id*. at 91.) Dr. Hecht concluded that based on his diagnoses and physical examination, Plaintiff had a "significant disability" and was "totally disabled from work." (*Id.* at 91-92.) Additionally, on October 22, 2003, Dr. Hecht submitted a Medical Assessment of Ability to Do Work Related Activities. (*Id.* at 93-95.) In his assessment Dr. Hecht reported that in an eight-hour day, Plaintiff could occasionally lift/carry five pounds; could stand/walk for two hours; could sit for two hours; could occasionally climb and balance but could not stoop, kneel, crouch or crawl. (*Id.* at 93-94.)

In Dr. Hecht's treatment reports dated December 10, 2003, March 29, 2004, and June 2, 2004, he observed during each visit tenderness in the lumbar spine with restricted flexion, extension, bilateral lateral rotation and bilateral lateral bending. (*Id.* at 129, 131, 218.) There was no muscle spasm, lordosis was normal, straight leg raising was negative, and Plaintiff had full active range of motion in the hips, knees and ankles. (*Id*.) Dr. Hecht noted that he was still waiting for authorization for an MRI, EMG and additional physical therapy, and indicated that Plaintiff remained disabled. (*Id.*)

### 3.    *Dr. Alan Wolf - Orthopedic Consultant*

On October 31, 2002, Dr. Wolf conducted a consultative orthopedic examination at the Commissioner's request. (*Id.* at 117-20.) In his report, Dr. Wolf reported, inter alia, that Plaintiff's gait and station were normal; he had difficulty with heel walking on the right and performed toe walking without difficulty; his squat was full; he needed no help changing or getting on and off the examining table; and he was able to rise from a chair without difficulty. (*Id.* at 118.) Plaintiff exhibited full flexion, extension, lateral flexion, rotary movement in the

cervical spine and had no cervical or paracervical pain or spasm. (*Id.*) In the upper extremities, Plaintiff displayed a full range of motion in the shoulders, elbows, forearms and wrists with no joint inflamation, effusion or instability. (*Id.*) In the proximal and distal muscles, strength was full at grade 5/5 with no muscle atrophy. (*Id.*) There were no sensory abnormalities and reflexes were physiologic and equal. (*Id.*)

In the thoracolumbar spine, flexion was to sixty degrees and extension was to ten degrees. (*Id.*) There was lumbar paraspinal tenderness but no sacroiliac joint or sciatic notch tenderness, spasm, scoliosis or kyphosis. (*Id.*) Lumbosacral spine x-rays revealed disc space narrowing at L5-S1 and straightening of the lordotic curve, but no spondylolisthesis or spondylolysis. (*Id.* at 120.) In the lower extremities, Plaintiff exhibited full ranges of motion in the hips, knees and ankles. (*Id.* at 118.) In the proximal and distal muscles, strength was full at grade 5/5 with no muscle atrophy. (*Id.*) There was reduced sensation in the right lower leg. (*Id.*)

There was no joint effusion, inflammation or instability, and reflexes were physiologic and equal. (*Id.*) Hand and finger dexterity were intact and grip strength was full at grade 5/5 bilaterally. (*Id.*) Dr. Wolf diagnosed Plaintiff with "musculoligamentous lumbar spine disease." (*Id.* at 119.) His prognosis was that Plaintiff's condition was "stable" and that he would benefit from additional physical therapy. (*Id.*) Dr. Wolf opined that Plaintiff has moderate restriction for prolonged sitting and standing; has moderate restriction for bending; should avoid heavy lifting; has no restrictions for activities requiring fine manipulation; and should be reevaluated in six months. (*Id.*)

### 4. *Lumbar Spine MRI, dated August 8, 2005*

On August 8, 2005, Plaintiff had an MRI of his lumbar spine which revealed a left sided disc herniation at the L3-L4 level mildly narrowing the left-sided neural foramen. (*Id.* at 221.) Clinical correlation for Left L3 radiculopathy was suggested. (*Id.*)

**C.** **_Medical Evidence After February 7, 2006_**

**1.** **_Dr. Mike Pappas - Physical Medicine and Rehabilitation_**

On February 14, 2006, Plaintiff saw Dr. Pappas for an initial evaluation for complaints of lower back pain, neck pain and left shoulder pain he suffered from a car accident on February 7, 2006. (*Id.* at 222.) Dr. Pappas noted that prior to this recent accident, Plaintiff was suffering with back pain and minor neck pain which had been exacerbated since the accident. (*Id.* at 223.) Motor strength testing revealed weakness in the upper and lower extremities with decreased sensation in the lower right extremity and right hand. (*Id.* at 224.) Dr. Pappas reported that Plaintiff had left shoulder tendinitis. (*Id.*) Dr. Pappas recommended that Plaintiff undergo x-rays of the cervical, thoracic and lumbar spine and right shoulder to rule out an osseous pathology and that he under go an MRI of the cervical and lumbar spine to rule out any disc herniations. (*Id.*.) Based on his radicular symptomatology and findings on physical examination, Dr. Pappas referred Plaintiff to an orthopedist and started him on a course of physical therapy. (*Id.*)

**2.** **_Lumbar Spine MRI, dated February 15, 2006_**

On February 15, 2006, Plaintiff had an MRI of his lumbar spine which revealed "L2[-L]3 posterior right and left peripheral disc bulging. L3[-L]4 and L4[-L]5 posterior disc herniations seen extending to flatten the ventral thecal sac and narrow the foramina. L5[-S]1 posterior disc bulge." (*Id.* at 226-27.)

### 3. *Cervical Spine MRI, dated February 15, 2006*

On February 15, 2006, Plaintiff had an MRI of his cervical spine which revealed disc herniation at the C2-C3 levels with impingement of the ventral cord and resulting spinal stenosis. (*Id.* at 228-29.) In addition, the MRI showed disc herniations at the C3-C4 and C5-C6 disc levels with cord impression and central canal stenosis as well as foraminal narrowing. (*Id.*) Furthermore, the MRI indicated disc herniations at the C4-C5 level with ventral impression on the cord and disc herniations at the C6-C7 and C7-T1 levels. (*Id.*)

### 4. *X-Rays, dated February 21, 2006*

On February 21, 2006, Plaintiff had x-rays taken of his cervical spine, thoracic spine, lumbar spine and left shoulder. (*Id.* at 230-31.) X-rays of Plaintiff's cervical spine indicated moderate loss of C5 vertebral body height, retrograde subluxation of the C5 and C6 discs, and intervertebral disc space narrowing at C3-C4 and C5-C6. (*Id.* at 230.) An x-ray of Plaintiff's thoracic spine was normal. (*Id.*) X-rays of Plaintiff's lumbar spine showed mild S-shaped thoracolumbar scoliosis, L3-L5 intervertebral disc space narrowing and L3-S1 facet arthritic changes. (*Id.*) An x-ray of Plaintiff's left shoulder revealed productive changes of the acromioclavicular joint. (*Id.* at 231.)

### 5. *EMG, dated March 22, 2006*

On March 22, 2006, Dr. Pappas conducted EMG testing on Plaintiff. (*Id.* at 234-38.) The EMG study revealed findings consistent with right-sided L5 lumbar radiculopathy of the lumbar spine and right C6 cervical disc level radiculopathy. (*Id.* at 236, 237.)

### 6. *MRI of Left Shoulder, dated April 4, 2006*

An MRI of Plaintiff's left shoulder on April 4, 2006 indicated a tear of the

supraspinatus and severe chronic acromioclavicular osteoarathritis associated with thickened coracoacromial ligament.  (*Id.* at 239.)

### 7.    *Dr. Hecht - Plaintiff's Treating Physician*

On September 18, 2006, Dr. Hecht reported that Plaintiff was "totally disabled." (*Id.* at 251.)

## III.    *The Issue on Appeal*

Pursuant to 20 C.F.R. §§ 404.101, 404.120 and 404.315(a), a person qualifies for social security benefits if he is both disabled and insured for disability.  *Id.*  Here, the parties agree that the only issue on appeal is whether the ALJ erred in finding that Plaintiff was not entitled to disability insurance benefits prior to February 7, 2006.

## DISCUSSION

## I.    *Standard of Review*

### A.    *Review of the ALJ's Decision*

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  The Court may set aside a determination of the ALJ only if it is "based upon legal error or is not supported by substantial evidence."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).  "Substantial evidence is 'more than a mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to support a conclusion.'"  *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Furthermore, the findings of the

Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits prior to February 7, 2006 was "based on legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77.

### B.      Eligibility for Disability Benefits

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an

14

impairment, the [Commissioner] will consider him disabled
without considering vocational factors such as age, education, and
work experience . . . . Assuming the claimant does not have a listed
impairment, the fourth inquiry is whether, despite the claimant's
severe impairment, he has the residual functional capacity to
perform his past work. Finally, if the claimant is unable to perform
his past work, the [Commissioner] then determines whether there
is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per

curiam)).  The claimant bears the burden of proof at steps one through four, while the burden

shifts to the Commissioner at step five to show that the claimant is capable of working.  *Green-*

*Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

## II.      *Application of the Governing Law to the Present Case*

### A.      *The ALJ's Decision*

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ

found that Plaintiff had satisfied the first two steps, to wit: (1) Plaintiff had not engaged in

substantial gainful activity since February 26, 2002; and (2) Plaintiff had severe impairments

related to cervical and lumbosacral spine disorders.  The ALJ concluded that Plaintiff did not

meet the third step, however, because his impairments neither met nor equaled in severity any

impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations.

Because the ALJ found that Plaintiff's ailments did not qualify as a per se disability under the

listings, the ALJ went on to analyze the fourth factor, i.e., whether Plaintiff's impairments

precluded performance of his past relevant work.  The ALJ found that Plaintiff's impairments

prior to February 7, 2006 did not preclude his performance of his past relevant work because

Plaintiff had the residual capacity to perform his past relevant work for that time period.  In this

regard, the ALJ found that despite Plaintiff's impairments

> [Plaintiff] had the residual functional capacity to perform his past
> relevant work; he could sit, stand and walk six hours in an eight
> hour work day, lift and carry twenty pounds occasionally and push,
> pull, reach, bend and stoop.

(*Id.* at 162.)  Based on these findings, the ALJ was not required to proceed to the fifth step of the analysis for the time period prior to February 7, 2006.  Thus, the ALJ found that Plaintiff was not disabled under the SSA prior to February 7, 2006.  (*Id.* at 162-63.)

Since February 7, 2006, however, the ALJ found that Plaintiff's impairments have precluded his performance of his past relevant work because he has not had the residual capacity to perform his past relevant work.  Once the ALJ determined that Plaintiff was not able to perform his past work since February 7, 2006, the ALJ analyzed the fifth and final step, viz. whether the Commissioner had established that there was other work Plaintiff could have performed.  In this regard, the ALJ found that

> [s]ince February 7, 2007, [Plaintiff] has not had the residual
> functional capacity to perform even sedentary work; he can sit less
> than six hours in an eight hour work day, stand and walk less than
> two hours in an eight hour work day and lift and carry less than ten
> pounds.
>
>        \*     \*     \*     \*
>
> [Plaintiff] is 56 years old, and is a college graduate and has no
> transferable work skills.
>
>        \*     \*     \*     \*
>
> As of February 7, 2006, the claimant's exertional limitations
> materially compromise his remaining occupational base for other
> work to the extent that there is no alternative substantial gainful
> activity existing in significant numbers in the national economy in
> which he can engage.

(*Id.* at 162-63.)  Taking into account Plaintiff's age, education, and functional capacity, the ALJ

found that Plaintiff was disabled under section 1614(a)(3)(A) of the SSA, beginning February 7, 2006. (*Id.*)

### B. Plaintiff's Arguments

Plaintiff asserts the following three arguments in support of his contention that the ALJ's decision should be overturned with respect to his finding that Plaintiff was not disabled prior to February 7, 2006: (1) the ALJ failed to give controlling weight to the medical opinion of Plaintiff's treating physician, Dr. Hecht; (2) the ALJ did not adequately consider Plaintiff's subjective complaints; and (3) the medical evidence fails to support the residual functional capacity determination by the ALJ. The Court will address Plaintiff's arguments in turn.

### C. The Treating Physician Rule

Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa,* 168 F.3d at 78-79.[4] The "treating physician rule" does not apply, however, when the treating physician's opinion is inconsistent with the other substantial evidence in the record, "such as the opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling weight, the ALJ "must consider various 'factors' to determine how much weight to give to the

---

[4] "Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502.

opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)).  These factors include:

(1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the

treating physician's opinion; (3) consistency of the opinion with the entirety of the record;

(4) whether the treating physician is a specialist; and (5) other factors that are brought to the

attention of the Social Security Administration that tend to support or contradict the opinion.  *Id.*

§ 404.1527(d)(2)(i-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32.  Furthermore, when giving

the treating physician's opinion less than controlling weight, the ALJ must provide the claimant

with good reasons for doing so.  20 C.F.R. § 404.1527(d)(2).

      **D.**     ***Application to the Present Case***

      As a preliminary matter, the Court notes that in remanding this action for further

administrative proceedings, District Judge Spatt, in his consideration of the prior ALJ's decision,

stated:

> Dr. Hecht was the [P]laintiff's treating physician.  The ALJ chose
> not to afford controlling weight to Dr. Hecht's opinion that the
> [P]laintiff was totally disabled.  In the Court's view, it was proper
> to do so because Dr. Hecht's testimony is in conflict with other
> portions of the record.  Among other things, Dr. Hecht's opinion
> that [P]laintiff was "totally disabled" does not comport with other
> evidence in the record, namely, Dr. Hecht's earlier reports that the
> [P]laintiff had maintained good functional ability and the
> [P]laintiff's own testimony that he can "function" despite his
> injury and that he has "gotten used to" the pain.  Also, Dr. Hecht's
> statement that the [P]laintiff has undergone "extensive physical
> therapy" for his back injury is inconsistent with the [P]laintiff's
> own testimony that he only underwent therapy for approximately
> one month because his insurer did not authorize such treatment.
>
> However, having decided not to afford the treating physician's
> opinion controlling weight, the ALJ failed to determine the proper
> amount of deference to give to Dr. Hecht's opinion. . . .   The ALJ
> failed to discuss [the regulations'] factors and did not explain the
> amount of deference ultimately to be afforded Dr. Hecht's opinion.

This is particularly troubling when considered with the fact that the ALJ credited the New York State examiner as a "medical expert." As the Commissioner admits in response [sic] this appeal, the New York State examiner is not a physician and, thus, should not have been credited as an expert.

The opinions of Dr. Hecht and the non-physician New York State examiner regarding the [P]laintiff's limitations differ greatly. Accordingly, a remand is appropriate for an evaluation of the proper weight to be afforded to each of these opinions. In making his determination, the ALJ should specifically consider and discuss (i) the frequency of examination and the length, nature and extent of [P]laintiff's treatment relationship with Dr. Hecht; (ii) the evidence supporting Dr. Hecht's opinion; (iii) Dr. Hecht's opinion's consistency with the record as a whole; (iv) whether Dr. Hecht is a specialist; and (v) other relevant factors.

(Tr. at 191-93.)

District Judge Spatt specifically directed that

on remand the ALJ should reconsider the [P]laintiff's claim after determining the proper weight to be afforded to Dr. Hecht's opinion, considering: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors; and . . . the ALJ should reconsider the opinion of the New York State examiner mindful of the fact that this individual is not a physician.

(*Id*. at 195-96.) Additionally, District Judge Spatt concluded that with respect to the ALJ's credibility determinations, that portion of the ALJ's decision rejecting Plaintiff's subjective testimony regarding his pain and functional abilities was sufficient. (*Id*. at 193.) Finally, District Judge Spatt found that new material evidence in the form of an MRI, dated August 8, 2005, warranted remand for additional administrative proceedings and directed that the ALJ consider evidence of Plaintiff's MRI. (*Id*. at 194-96.)

For the reasons set forth below, the Court finds that the ALJ failed to comply with

District Judge Spatt's instructions on remand.

### 1.    *Plaintiff's Functional Abilities and the Treating Physician Rule*

Plaintiff argues that in determining his residual functional capacity prior to February 7, 2006, the ALJ failed to properly apply the treating physician rule and consider the various factors to be evaluated in assigning less than controlling weight to the opinions of the treating physician. The Court agrees.

The ALJ found that although Plaintiff's impairments were severe, Plaintiff had the residual functional capacity to perform his past relevant work prior to February 7, 2006. In making this determination, the ALJ stated:

> As discussed in the prior decision, Dr. Hecht's October 22, 2003 examination of [Plaintiff] revealed cervical spine tenderness with restricted flexion and extension, full bilateral rotation and bilateral bending, no spasm and normal lordosis. There was tenderness in the left shoulder with mild restriction in range of motion, a full range of motion of the right shoulder, normal strength bilaterally and grip strength bilaterally. There was mild restriction in range of motion of the lumbar spine with tenderness and no spasm, normal lordosis and negative straight leg raising. There was left knee and positive McMurray's test but otherwise the lower extremities were unremarkable. Dr. Hecht said [Plaintiff] could lift and carry five pounds, stand and walk two hours in an eight hour work day and sit two hours in an eight hour work day and could never stoop, crouch, kneel or crawl. On October 3, 2002, Dr. Hecht said [Plaintiff] had lumbar flexion to 75 degrees and extension to 20 degrees (0-90 degrees flexion and 0-30 degrees extension is normal). Therefore, the range of motion of [Plaintiff's] lumbar spine was only mildly restricted. Dr. Hecht reported a full range of motion in all other areas. His reports show [Plaintiff] maintained good functional ability. On March 6, 2003, he said [Plaintiff] could stand 0 hours, sit 1 hour, drive 1 hour and walk ½ hour. A December 10, 2003, physical examination noted tenderness in the lumbar spine with a partially restricted range of motion, but no spasm, normal lordosis and negative straight leg raising. The lower extremities were normal and the remainder of the examination was normal. Furthermore, a March 29, 2004 report

showed [Plaintiff's] condition unchanged. His condition required
conservative treatment only. Consequently, Dr. Hecht's opinion is
given limited weight as his reported findings are consistent with
only mild functional limitations and his assessment indicated
extreme limitations.

\*       \*       \*       \*       \*

The determination of [Plaintiff's] residual functional capacity is
reserved to the Administrative Law Judge, SSR 96-5p. The
undersigned finds that prior to February 7, 2006, [Plaintiff] had the
residual functional capacity to perform his past relevant work. He
could sit, stand and walk six hours in an eight hour work day, lift
and carry twenty pounds occasionally and push, pull, bend, stoop
and reach.

(Tr. at 160-61.)

While the ALJ acknowledged the concerns of District Judge Spatt and set forth

the applicable regulations of the SSA, upon determining that Dr. Hecht's opinions were not

entitled to controlling weight, there is no indication that the ALJ actually considered these

guidelines in assessing the weight to be accorded Dr. Hecht's opinions. Notably, that portion of

the ALJ's decision that addressed Plaintiff's treating physician closely resembles the prior ALJ's

analysis which District Judge Spatt rejected as insufficient. (*Compare id.* at 12 *with id.* at 160.)

As an initial matter, from the ALJ's limited discussion of Plaintiff's disability

prior to February 7, 2006, it is unclear how he considered Dr. Hecht's findings to be consistent

with only mild functional limitations, given Dr. Hecht's consistent provisional diagnosis in his

treatment reports of possible lumbar radiculopathy and herniated disc, pending MRI and EMG

testing, and his assessment of extreme limitations. The ALJ did not point to any substantial

evidence in the record to establish that Plaintiff could perform his past work prior to February 7,

2006, but rather stated in conclusory fashion that Plaintiff's "condition required conservative

treatment only." *See Wagner v. Secretary of Health and Human Servs.,* 906 F.2d 856, 862 (2d

Cir. 1990) (holding "circumstantial critique by non-physicians, however thorough or responsible,

must be overwhelmingly compelling in order to overcome a medical opinion."); *see also Rustico*

*v. Astrue*, No. 05-CV-349 (SLT), 2008 WL 2622926, at *10 (July 1, 2008) (instructing the ALJ

from making medical findings).

Moreover, upon determining that Dr. Hecht's opinion was to be given limited

weight, the ALJ failed to analyze the other factors listed in the treating physician rule. 20 C.F.R.

§ 404.1527(d)(2). For example, in summarizing the medical evidence prior to February 7, 2006,

the ALJ reported four of the thirteen dates on which Dr. Hecht met with Plaintiff in his decision,

but never noted the frequency of the examinations or the total length and nature of Dr. Hecht's

treatment relationship with Plaintiff. In addition, there is nothing in the record which establishes

that the ALJ considered the presentation of evidence which supported Dr. Hecht's diagnosis such

as Dr. Shimkus' medical records and the MRI of Plaintiff's lumbar spine on August 8, 2005,

which District Judge Spatt specifically instructed the Commissioner to consider on remand. (Tr.

at 194-96.) The MRI revealed a left-sided disc herniation at the L3-L4 level mildly narrowing

the left-sided neural foramen and clinical correlation for Left L3 radiculopathy was suggested

which may have been relevant to the assignment of weight to Dr. Hecht's opinion.

Further, there is no indication in his decision that the ALJ considered Dr. Hecht's

opinion with other medical evidence in the record such as the consultative physician's report or

the state examiner's report in determining that Plaintiff had the residual functional capacity to

perform his past relevant work prior to February 7, 2006. Nor is there any evidence that the ALJ

considered Dr. Hecht's specialty as a board-certified orthopedist with a specialty in physical

medicine and rehabilitation.

In short, because the ALJ's decision is deficient with respect to the treating physician rule as it related to Dr. Hecht and the medical evidence prior to February 7, 2006, the Court finds that the matter must be remanded to allow the ALJ to clarify his reasons for assigning limited weight to Plaintiff's treating physician. *See, e.g., Halloran,* 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physicians' opinion and we will continue remanding when we encounter opinion ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion") (internal quotation marks and citation omitted); *Schaal v. Apfel*, 134 F.3d 496, 503-05 (2d Cir. 1998); *see Kugielska v. Astrue*, 2007 WL 3052204, at *8 (S.D.N.Y. Oct. 16, 2007) ("In assessing an ALJ's legal error, the Second Circuit has remanded when the determination was made based on a clearly erroneous standard, or when the legal standard applied was not entirely clear and the required statement of valid reasons for not crediting the opinion of plaintiff's treating physician was not contained in the ALJ's written determination.") (internal quotation marks and citations omitted).

### 2.    *Plaintiff's Subjective Complaints Prior to February 7, 2006*

Plaintiff contends that the ALJ failed to properly assess Plaintiff's subjective complaints prior to February 7, 2006.  The Court disagrees.

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled.  *See* 20 C.F.R. § 404.1529(a).  An ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence.  *Id.* § 404.1529(b).  If a claimant's subjective

evidence of pain is supported by objective medical evidence, it is entitled to "great weight."

*Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992). However, if a

claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the

objective medical evidence, additional factors must be considered. *See* 20 C.F.R. §

404.1529(c)(3). These include daily activities, the location, duration, frequency and intensity of

symptoms, the type, effectiveness and side effects of medication, and other treatment or

measures to relieve those symptoms. *Id.*

> In addition, SSR 96-7p provides in pertinent part:
>
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (July 2, 1996). Absent such findings, a remand is required. *See, e.g.*, *Schultz v.*

*Astrue*, No. 04-CV-1369, 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008).

In the prior ALJ decision concerning Plaintiff's disability, District Judge Spatt

found that the ALJ had properly assessed Plaintiff's subjective complaints and had sufficiently

articulated his rationale for concluding that Plaintiff's subjective testimony regarding his

limitations was not totally credible. (Tr. at 193.) In so doing, District Judge Spatt rejected

Plaintiff's claim that remand was warranted on this issue, and thus in remanding this case did not

order the Commissioner to reconsider this issue.

Accordingly, Plaintiff's argument on remand that the ALJ failed to properly assess his credibility is not properly before this Court as it pertains to the period prior to February 7, 2006. To the extent, however, that the ALJ, on remand, considers new evidence in applying the treating physician rule to Plaintiff's claim, *see infra*, the ALJ should also consider whether that reevaluation alters his assessment of Plaintiff's subjective testimony in light of the evidence as a whole.

### 3.    *The Medical Evidence*

Plaintiff argues that the ALJ failed to take into account all the medical evidence before him in determining his residual functional capacity prior to February 7, 2006. The Court agrees.

A review of the record reveals that the ALJ's decision limited his discussion of Plaintiff's residual functional capacity during this relevant period to four treatment reports of Dr. Hecht. Dr. Hecht's treatment reports consistently reflected lumbosacral sprain and possible herniated disc and lumbar radiculopathy and stated that he was awaiting authorizations for MRI and EMG testing to address these presumptive diagnoses. As discussed above, the ALJ gave no indication that in making his assessment he had evaluated all of Dr. Hecht's treatment reports together with the results of the MRI of Plaintiff's lumbar spine dated August 9, 2005 or that he had considered Dr. Shimkus' report or Dr. Wolf's report. In addition, while the parties do not dispute the ALJ's finding that Plaintiff has been disabled within the meaning of the SSA since February 7, 2006, there is medical evidence in the record following that time period that may or may not have some bearing on Plaintiff's impairments prior to February 7, 2006 and should at least be considered. Accordingly, on remand, the ALJ shall specifically address these clinical

and diagnostic records.

### III.   *The Matter is Remanded*

"Courts have declined to remand if the record shows that a finding of disability is compelled and only a calculation of benefits remains." *Medina v. Apfel*, No. 00-CV-3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001). "Conversely, if the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings." *Id.* (internal quotation marks and citations omitted). On this record, the Court cannot conclude whether Plaintiff had the residual functional capacity to perform his past relevant work during the relevant time period. Accordingly, the case is remanded to allow the ALJ to reweigh the evidence, developing the record as may be needed. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence. Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.") (internal citations and quotation marks omitted). Upon remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.

### CONCLUSION

For all of the reasons stated above, the Commissioner's motion for judgment on the pleadings is **DENIED** and Plaintiff's motion is **GRANTED** to the extent this case is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated:  Central Islip, New York
          February 10, 2009


                                              ____/s_____
                                              Denis R. Hurley
                                              United States District Judge